Good morning. This case is on the note G-16-0240, the people of the state of Illinois under the authority of the Honorable Ferral-Mujica, defendant's husband. I would like to introduce the defendant's husband, Mr. Bruce Kirkham, on behalf of the District of Kappa Luma, Mr. David A. Clark. Good morning, counsel. Mr. Kirkham, if you're ready. May it please the court and counsel. Good morning, your honors. When Armando Ferral-Mujica pled guilty to aggravated battery, he did so with the reasonable belief that Judge Gordon Graham would send him to prison term between 8 and 12 years. And Mr. Mujica's belief was reasonable because he believed he had the assurance of a sentence of 8 to 12 years from Judge Graham himself. Why wouldn't that have been mentioned on the record at some point in time? I mean, doesn't the transcript refute that notion when you look at all the entire proceedings? He was looking at a minimum of, what, was it 40 years or somewhere in that neighborhood? On charges that were dismissed. So he's looking at 40 years as opposed to one class X, correct? Correct. And there was an offer that the State made. The defendant rejected that offer. We don't know what that offer was, but it was rejected, correct? Correct. And then defense counsel initiates a 402 conference. With agreement of the State, yes. And then there's never any mention on the record that the court ever said or ever recommended a sentence of 8 to 12 years. I don't know that it's customary or required that that be put on the record. It's a recommendation. Well, during the admonishments when the court is telling the defendant that he's facing 6 to 30 years, isn't the attorney, defense counsel, obligated to say, wait a minute, Judge, that's not our understanding. You made a recommendation under Supreme Court Rule 402, which the State agreed to, 8 to 12 years, and that's why they're not crossing the other charges. That's – any effective attorney, any lawyer, whether it's common practice or not, would say that because that's what the rule says, and the rule was in place at the time. If the judge makes a recommendation, the attorneys or the defendant or the State can reject the recommendation, and then the defendant cannot move for a substitution of judge. So – But where does that say that he – It's in the rule. It's in the rule. If the court makes a recommendation that has to be put on the record, the defense counsel can't simply say, here's what Judge Graham told me he would sentence you to? Have that discussion with his client? The court is admonishing the defendant you're facing 6 to 30 years. You're not – are you suggesting that the attorney, competent attorney, would not have said, Judge, there was a 402 conference, your recommendation is 8 to 12? I think he was confident when he took the offer that Judge Graham made, the recommendation that Judge Graham made in the 402 conference and related it to his client. You know, the 402 admonitions to make assurances of please voluntary required him to inform the defendant of the sentence exceeding range. That's what the judge did here. I don't know that it says in there that if the judge has recommended a specific sentence or narrowed that range in a 402 conference, if that has to be on the record. You can still go to an open plea fully understanding that your judge has represented to your attorney that has been relayed to the client. But what would be the reason not to put it on the record? I mean, the whole point of the judge having the colloquy with the defendant is to assure that there is a full understanding of all of the terms, and certainly that range, if it were there, 8 to 12, would have been part of that. Would it not? I mean, the rule only says of the possible range of sentences, in this case 6 to 30. I don't know that the rule says you're inventing a new rule. That's not a rule for it. The rule says in 402 at the end of the conference the judge may make a recommendation as to what an appropriate sentence may be. The defendant or the prosecutor is free to accept or reject the judge's recommendation. If there was a 402 conference and there's going to be an open sentencing hearing, why would an attorney not put that on the record? And the state says, Judge, we would never have agreed to that. We would never have known the other charges. We never agreed to 8 to 12. Well, that's the other side of it. Why didn't the state say? And my question is why, if the rule says that, why is there no record of that? Well, the rule had been in effect for three months at the time, four months at the time of this 402 conference. Part of that, it just said the trial judge shall not initiate plea discussions. The rule is set up for 402d-1 for admonitions to the defendant as to the 402 conference. And the part that you're referring to, the defendant or prosecutor is free to accept or reject, that's an admonition to a defendant leading up to the question. Now, you understand that this doesn't result in a plea. You can't get a substitution of judge. There's no cases that have decided that I'm aware of that have interpreted 402d-1 as you're suggesting that this recommendation, if the judge does make a recommendation, that it be entered into the record of the accommodation. Common practice would dictate that if a judge or a prosecutor made a recommendation that is inconsistent with the arguments, that a competent attorney would have raised this issue in a timely fashion. And the timely fashion would have been during the admonishments when the defendant is pleading guilty. So if you look at the entirety of the transcript, the State is making an agreement to nolly cross the additional charges. And Mr. Connelly testified that if the judge had said 8 to 12, we would have tried the case. Assuming you're correct. I'm just reading from the transcript. I'm asking you, why wasn't this cleared up before the plea? I don't have an answer to that. Is it really an argument that defense counsel was ineffective for failing to put on the record the judge's recommendation in a timely fashion? Well, then put yourself in the position of the defendant who is considering plea negotiations and considering offers from the State. He agrees to a 402 conference. His attorney comes to him and says the judge has indicated, recommended that you're going to get a sentence of 8 to 12. They ask for a couple of brief continuances. Six weeks later, one week before the plea, the judge says this is a continued 402 conference. And the defendant is still uncertain as to whether or not he's going to accept whatever the agreement is. Correct. But ultimately he does. One week later, he says, I will plead guilty based on the representation of my trial attorney that the judge told him I would be sentenced to 8 to 12. That's what he testified to in the post-plea motions. If the judge said 8 to 12, why would the State have nollied across the other charges? I mean, that makes absolutely zero sense. Well, maybe it makes sense if the judge actually said that in the conference. Well, the judge couldn't give him 8 to 12 unless the State agreed to nolly across the other charges. The judge could not have given him. The State representative would like a sentencing hearing because we'd like to present evidence in aggravation. But that can certainly be interpreted as the judge determining the sentence between 8 and 12. That doesn't necessarily mean the State wants 6 to 30. You know, the State says that the judge said he would consider a sentence less than 12 years. The judge, according to the State, the judge says, look, I'll consider both 8 to 12 as well as what the State recommends. That's what the prosecutor's testimony was, correct? Yes. But he also later testifies that I have no idea where this number 12 came from. So he's somewhat internally contradictory himself in his testimony at the post-plea hearing. But I think the bottom line here is you've got to look at this from the perspective of Mr. Mujica. Okay, he's the one who is in a position where he's either got to go to trial or accept an offer or plead guilty or enter some kind of plea. His attorney says to him, the judge, not the prosecutor, this is not my best guess. Those things are separate types of representations. Defense counsel, Mr. Hoffman, goes to the defendant and says, the judge, Judge Graham, says he'll give you 8 to 12. Okay, the defendant relies on that. The defendant steps up to the podium and pleads guilty based on his counsel's representation that he's going to be sentenced to 8 to 12 years. Well, it was more than what counsel said. The trial court told the defendant repeatedly the range of sentencing. And he said to the defendant, the entire range of sentencing is being left to the court. Do you understand that? The defendant answers yes. And the judge says, these are the possible sentences. You know, it makes sense that it's going through the formality of a plea. The defendant is presented then with a range of sentences and a judge saying, you understand that I could send you to anywhere in that possible range. It's perfectly reasonable for a defendant whose attorney has told him, however, the judge told me in a 402 conference that he's going to send you to a narrower range of 8 to 12. The defendant understandably believes his attorney based on the judge's representation. You know, this isn't a... Why isn't the... on that topic, why... and relying upon your attorney's advice and ignoring admonishments, why isn't the reasoning and redundancy not controlling? Well, you had different factual situations. First, there was no 402 conference in residence. Right, it's basically what the attorney says, you're going to get probation. Well, based on an agreement that the defense counsel had with the prosecutor, the judge specifically told the defendant in admonitions that I'm not bound by that agreement. That's a step far beyond what the defendant was told in this case. But the language in that case, we said, the court said, we look to the admonishments and the defendant's responses. Sure, and included in those admonishments was, I'm not bound by the agreement that your attorney has reached with the state. And that's what the judge said here. The entire range of sentencing is up to me. But the defendant was told by his attorney that the same judge who said that is going to send you to 8 to 12. And one week before the plea was entered, the judge said, this is a continuing 402 conference. The judge... He asked, is this a continued 402? If you look at the end of that, he said, that's at the start. If you look at the end of that, he said, as I stated, this is a continued 402 conference. And at that point, again, why wouldn't the attorney say, judge, you know, you made a recommendation. My client's still considering it. I don't know the answer to that. I don't know why Mr. Hoffman didn't speak up. What I know is the effect that it had on the defendant here. The defendant reasonably believed that he would be sentenced to 8 to 12. But there is also some conversation now at the sentencing hearing where there is a discussion about some additional information because the investigation is ongoing. And the defendant acknowledges that, correct? Yes. And so even if Mr. Hoffman said the judge has agreed to 8 to 12, or the judge has said 8 to 12, we now have additional information. How does that figure into the 8 to 12? Well, the defendant can reasonably believe he's still in the 8 to 12 because the judge considered one of those points of new information as a factor of mitigation, that he was... Solicited. Solicited because of, by another person, because of a romantic situation. So, you know, if you're thinking you're getting 8 to 12, a new mitigating evidence comes up. That's certainly more persuasive. The judge felt that that was exculpatory type of information. Yes. Yes. And that shouldn't raise a red flag to the defendant that, oh, my gosh, things are about to get a whole lot worse. That breaks in his favor. To Justice Hutchinson's point, though, the attorney doesn't say, judge, we still want to plead for the 8 to 12. He just says, no, we're going to stick to the blind plea. The court says, I want to make sure you still want to plead guilty. And through the interpreter, he says yes. So, I mean, you know, the judge is continuing to make sure that this is what he wants to do and offering all sorts of opportunities for either Mr. Hoffman or Mr. Keneally to say, judge, but. But if you're the defendant and you think that you've been promised by the judge 8 to 12 and they want to have a sentencing hearing, it's reasonable to believe that the information at the sentencing hearing is what's going to determine the sentence between 8 and 12. Is there any doubt as to the defendant's guilt? I certainly would not concede his guilt in this case. Pardon me? I would not concede his guilt in this case. What meritorious defense is there? Well, if we're talking about withdrawing a guilty plea, that's only one of the alternative basis. So, you know, if you plead guilty under a mistake of fact, which is what we got here, those are ors, not ands. A mistake of fact is the sentencing range. Yes. No other mistakes regarding the facts of the offense. Well, the more we rely on his understanding, his reasonably objective belief that he had an assurance from the sentencing judge that he would be sentenced to 8 to 12. If there are no further questions, I would ask this court to reduce the sentence or alternatively vacate this guilty plea. Thank you. Mr. Bernard. Good morning, Your Honors. First off, I just want to state that the defendant does have the burden of showing substantial objective proof that he was, that his mistaken impression was correct. Well, his attorney testified, however, that that's what occurred during the 402 conference. So isn't that enough? No, I think the judge had to make some credibility decisions during that hearing. What type of credibility decisions? Well, the fact is, is he going to believe the assistant state's attorney or the defense counsel? I think he decided to believe the assistant at that time because the assistant insisted that they wanted 30 years. That's what they talked about and that Judge Graham never spoke to it. The defendant wouldn't have had any way of knowing that. No, he would not. But again, he was given these admonitions. And as this court has said and read in that, excuse me, still got a cold, that, you know, it's incumbent upon the judge to make these admonitions. But, you know, you think it's not asking too much to ask the defendant to believe those admonitions. Now, why didn't the defense counsel, as Justice Brickett had stated, why didn't the defense counsel raise anything? Why hadn't the defendant raised any questions here? I think there was some matter of credibility there that they had to make a decision or the judge had to make that decision. Because I'm not following you. The judge had to make the decision about what? The difference between the credibility decision between the defense counsel saying that Judge Graham discussed 8 to 12 and the assistant state attorney saying that there was no discussion of that, that they talked about a 30-year sentence and that's what they wanted from this defendant. They were talking about that and that they agreed that it would be, you know, up to the judge. It was an open plea. But the defendant obviously wasn't part of that 402 conference and all he knew was what his attorney had told him. But, no, that's not the only thing he knew. He was given admonitions. He was told it's 6 to 30 years. He was told that twice. He was given the admonitions at the time of the plea. Right, at the time at the guilty plea and then later at the sentencing hearing when they said, Do you still agree to this, you know, this plea here? This is only through an interpreter, correct? Correct. But certainly he was given those admonitions. There's no indication of the record. The presumption is the interpreter accurately translated the comments and there's no argument that the translation was incorrect. Correct. And the judge did make a comment as well. I believe it was 1129 of 12 when the case was continued so the defendant could think about everything. The state objected to a longer continuance and said one would be fine. But the court also made a comment and gave a date and said, I was probably caught a little short on that one, not really having the familiarity necessary. Do you recall that from the transcript? The judge was basically telling the attorneys that he was caught off guard in that earlier 402. Doesn't that have a tendency to support the defendant's argument that there was something said in that 402 that was not quite clear? I don't remember that explicit statement now, but my thinking probably would be it could mean anything. I just don't think it makes anything more or less true here. Well, Mr. Hoffman did say, accepting my point of view, these are very serious charges with very serious consequences. My client has asked me to give him more time to think about the representation. So he's talking about, quote, very serious consequences. And this is Mr. Hoffman and said he needs more time to think about everything. The court did comment that they're still engaged in conversation. That's good. When we were last here, it was a 402 where we did discuss matters as permitted by rule. I was probably caught a little bit short on that one, not having familiarity necessary with the case. So there was something. We don't know what was said during that 402. But there was something that the judge apparently was uncomfortable with and said, yeah, take more time. I'd have to agree with that interpretation, but I don't know exactly why. I think he probably knew something of what was the facts in the case and the circumstances of someone using a machete and someone else shooting the victim in the chest. But I don't think there's enough there. We know that another judge, Judge Prater, had apparently made a 16-year recommendation for the co-defendant. For the co-defendant, correct, which is why I think in this situation, why the defense counsel or defendant would think that they would get anything less seems to me not too credible, either considering how horrible the offense was and the fact that he was pretty much caught dead to rights. They found the machete outside, a bloody machete on the driveway. They found the defendant with blood all over his shirt, the co-defendant with head wound gleaming from the head. His gun matched the bullet that was recovered. My understanding, my memory is that, yes, it did. So there really wasn't anything else there. To me, under these circumstances, a 16-year sentence was doing pretty well. Now, you know, a defendant who does not, and his defense counsel, if he doesn't take heed to these admonitions and he ignores them, he shouldn't be rewarded for that, you know, ignorance. It just doesn't make sense that someone would ignore that when the judge has repeated it several times on the record. Well, our admonitions for pleas after four or two conferences are no different than our admonitions for any sort of plea, even when they come in on first appearance. These are the penalties that are possible. There's no change to the other rules, to my knowledge, that say, okay, if you've made a recommendation, you also have to say it may be. Now, this is the minimum. This is the maximum. But I'm sort of looking at 12 to 15 or 8 to 12, pardon me, but I want a sentencing hearing. There's nothing that says that, correct? Correct. But if there is some issue that it is going to be significantly less than the minimum, that range, doesn't it make sense that somebody put on the record best practice, if nothing else? Well, I guess that was the thing in this whole case is I wondered, why didn't the defense counsel say something if that was his understanding? So the only thing I could think of is that maybe later on, you know, these people are busy, he might have been thinking of a different 402 conference. I don't know. But certainly, if he was representing this defendant, he would have mentioned something, and the defendant should have mentioned something. But the fact is, it wasn't. But besides all that, the defendant was given the admonitions. He was given them to him at least twice, you know, after the plea, after sentencing, and he ignored them. And it's a nice bright-line rule by this court is that there's a reason why we require the trial court to give these admonitions, and it's because of situations like this. Now, not all defendants are truthful about their guilty pleas. If there's a legitimate question regarding the defendant's misapprehension, wouldn't justice be better served by a trial? And let the state reinstate all the other charges and try this case. I don't think so. Maybe the defendant deserved much more than 16. Well, yeah, I think he would get much more than 16 if he went to trial. But the fact is, is if we're going to make sure that guilty pleas are protected and that the fact that they're good, does this mean if we say, oh, no, he should go back for trial now and he shouldn't have to listen to the admonitions, then why do we even have guilty pleas? We'll have a bunch of them. That's a policy argument. That's a policy argument.  We follow the rules. I think that the rule that was stated in this court is a good rule, that admonitions must be required when protecting the defendant. He went into this clearly knowing that he could be sentenced from 6 to 30 years. When a trial court says, you know, including I have discretion to give you a sentence anywhere from 6 to 30 years, that entire range, how else can he say this? What should he have done with the information from his attorney? He should have asked the judge. Judge, I thought he had 8 to 12. Does he have no responsibility in this? I mean, he is the one that's been put on trial. He should have spoke up and said, Judge, my defense counsel told me it was somewhere in the range of 8 to 12. I haven't heard anything about that. He didn't say anything after sentencing hearing. Many times you read it in the record, you run into trial where someone is sentenced, and then all of a sudden the defendant is like, wait, wait a second. You know, no, that's not it. Well, isn't a courtroom a pretty intimidating place to be? And even if the interpreter interpreted everything that was said correctly, I mean, the fact is that English wasn't his first language, and so this was all done by translation. Isn't that a lot to ask of the defendant? No, I don't think so, Your Honor. I think the fact that he was clearly admonished several times, what was the difference between what was it, December 6th at 12, and then two months later, almost two months later at the sentencing hearing? He had that time to think about it and ask his counsel. And he was asked, the defendant was asked on the record, has anybody promised you anything? Correct. And he said no. And he said no. So is he telling the truth? I don't know how to, you know, but there's certainly nothing here that would indicate that the trial court abused its discretion when it denied his motions. While the defendant may not have recognized the significance of a sentencing hearing as opposed to just a sentencing investigation, shouldn't, I mean, wouldn't that be, I mean, they sat in that conference together, according to all reports, Keneally and Hoffman. Keneally wants upwards of the maximum, I think is what he said, and Hoffman says, well, would you consider 8, 8 to 12? And Keneally apparently says, I'll dismiss these cases, but I want a sentencing hearing. Doesn't that raise a red flag? Or shouldn't it raise a red flag maybe with defense counsel to make sure it's clear? Oh, definitely. Definitely. Because what's going to happen in a sentencing hearing? You'll get some good information, but you're also going to get some, probably in this case, some pretty graphic information. Well, certainly. And the fact is, is if that was true, and that's what I think Judge Federer was looking at, is that, hey, I think, not that the defense counsel intentionally lied or anything, but I think he is, you know, not remembering, excuse me, not remembering correctly here. And, again, that's where that credibility decision, I think, he had to make there between him and Keneally. Are there any other questions, Your Honor? Just for the record, he likes to be called Federer as opposed to, I know what you mean when you say Federer. Federer, okay. So just in case you happen to meet him, he'd be Judge Federer. Thank you, Your Honor. Thank you. Mr. Kirkham. Thank you, Your Honor. And if I'm saying your name wrong, please tell me. No, you've got me right every time I've been here. Thank you. You know, let's talk about credibility determination. Don't be lulled into this sense that Judge Federer or Judge Graham made credibility findings in this case. There's no credibility findings in the written decisions of either judge who heard these motions, including Judge Graham. You know, there was a dispute by Mr. Keneally, I believe is his name, at the hearing on the motion to the post-plea motions on remand from this court, but Judge Federer never said, I find that that didn't happen. I find that Judge Graham did not make that offer or make those statements or make that recommendation. Okay. Judge Graham heard this motion from the defense counsel who immediately filed a motion, a timely motion after sentencing to reconsider a sentence, filed an affidavit, and said, we have a 402. Judge said 8 to 12. Okay. Then he gives him 16. We want a motion to reconsider before Judge Graham, who never said, I never said that or adopted those statements or anything. Go back and read the 2013 ruling of Judge Graham. He never committed himself one way or the other. He dismissed the pro se motion to withdraw a plea as untimely. But on the motion to reconsider statement or sentence, all he said was 16 is an appropriate sentence. Okay. He never said, I never made that promise. Therefore, there's no factual basis. There's no basis. Aren't you shifting the burden? It's your burden. It's undisputed in this case. He didn't say that. That doesn't mean that he did say that. Okay. It's in a, you know. I'm just saying don't get involved in it. We're not. You understand the point though. It's your burden. I do. Okay. But here's what I would respond to that then. Okay. Right up front, right after sentencing, defense counsel said file an affidavit along with this motion saying I heard Judge Graham say in his 402 conference 8 to 12. I took that to my client. I told him that. He pled guilty in reliance on that. The defendant testified at the second hearing that I agreed to a 402 conference. Right after the conference, my attorney comes to me and says Judge Graham said he had an offer to me. It's in stilted English because he speaks Spanish. But he said I got an offer from the judge of 8 to 12. Wouldn't that, wouldn't agreeing to that and accepting that position, wouldn't that reward the defendant for ignoring the court's admonishments? And the court didn't just admonish them. When he asked them specifically, has anyone promised you anything? What you're doing is you're pulling the rug out from under the defendant's feet when you do that. Because he gets an offer at a 402 conference and there's a couple of continuance. What is the point of the admonishments then? What's the point? The defendant can reasonably believe that the judge who's giving me the admonishments, Judge Graham, the same judge, is giving me the potential range of sentences, 6 to 30. Okay. My attorney has assured me, and as of a week before, the judge was saying this is a continued 402 conference. There's no indication on the record that that has happened. He was asked that question on the record. Has anyone promised you anything? As he is required to do by rule 402. And the defendant says no. The defendant is not required to say no. The defendant can say, yes, by the way, Your Honor, I was told I'm getting 8 to 12, not 6 to 30. That's why I'm saying you're pulling the rug out from under the defendant's feet. He is told by his attorney you're going to get 8 to 12 on a plea. That's an ineffective assistance claim. But we end up in the same place. The defender reasonably relies on. Okay. So if Hoffman hears Judge Graham say 8 to 12, I will give you 8 to 12. Again, that's an ineffective assistance claim. How is that affected by taking that to his office? Because he didn't put it on the record when he should have. That's an ineffective assistance claim. If you are looking at this as if that performance by the attorney can be superseded onto a motion to withdraw a plea when there's nothing in the record. We're talking about behavior, things that occur outside the record. Okay. We have the defendant testifying that I was told by my attorney that I would get 8 to 12. One of the grounds for withdrawing a guilty plea is pleading guilty under a mistake of fact. The defendant, in good faith, pled guilty under a mistake of fact then that his counsel somehow misled him or whatever. But the effect is the same. We end up in the same place. The defendant should be permitted to withdraw his guilty plea, if I may continue to conclude. He should be permitted to withdraw his guilty plea. He's the one innocent party in this whole set of plea confusion that is innocent for him. With regard to the discussion preceding this precedent. In terms of entering his plea of guilty. He honestly, in good faith, objectively, reasonably believed based on his counsel's statements. How can he believe that when his co-defendant got 16? Because his attorney said, I met with the judge and I'm going on the judge's own words. The judge told me this. If you're a defendant, how can you not believe that? Are you not entitled to believe your own attorney? No, not when the judge is admonishing. That's what we said. And that's what the court has said. You can't be rewarded for ignoring the court's admonishments. And the context is different, but it's the same animal. You can't rely on things that are set outside the record. And you do so at your peril. Do you have a letter from, was there a letter sent to the defendant? Was there any written communication between counsel? Did counsel show the court the evidence? You know what I'm talking about. Lawyers make notes. In DuPage County, we used to have a blue back. We'd make notes. Here's the offer. Was there any evidence offered that documented or recorded for historical purposes and for future litigation? What was said during that 402? Because I know that lawyers do it routinely. Judges do it routinely. Was there any such parole evidence offered to support the defendant's assertion that he was told 8 to 12? There was no notes. Would you agree that that is common practice for defense counsel to write down his notes so he doesn't have to, as Mr. Kirkland pointed out, rely on a recollection that might be years later? Common practice is you note it. You make a document. You document, and you send a letter to the state saying, you know, pursuant to our discussions today, we have this agreement. Please count one. The judge will sentence 8 to 12. I mean, I don't think it's so complicated. The trial attorney, who there's no reason to think he's lying, heard Judge Graham say 8 to 12. There is a reason to question what he's saying. He didn't have to write it down to go tell his trial in six weeks. The transcript. The transcripts. They can speak for themselves. Mr. Kirkland, is there, in this case, is there any question about language? We have an interpreter. We have obviously a person whose comfortable language is Spanish or some dialect of Spanish from Mexico. When you say, Judge Graham said, I am going to give you between 8 and 12 because that's apparently what Mr. Hoffman said, could it have been, I will consider between 8 and 12, but Mr. Keneally wants more? I mean, not the Mr. Keneally part, but I will consider between 8 and 12, or is language not an issue here? Well, I, you know, we have to trust our interpreters. Okay. Well, I will get. I do know that, well, I think, I'm pretty sure that I recall from the record the transcripts that Mr. Hoffman indicated. He conveyed through an interpreter to the defendant what Judge Graham had recommended during the 402 conference. But we never have any place on this record that we can see where Judge Graham said, I will impose no less than 8 or no more than 12. No, that's not, that's not in there, and Judge Graham didn't adopt or deny that in his written ruling. Okay. Well, thank you very much. Thank you, Counsel. Interesting argument today. I would ask this Court to first reduce. What would you prefer? I'm not sure that it's his preference, but. Well, I believe that the record does contain sufficient evidence to believe that Judge Graham did say 12. Okay. And that was the first request at the post-plea motions. First, it was motion to reconsider sentence and ask for imposition of the 12-year term. And the alternative would ask Your Honors to vacate the guilty plea. All right. Thank you very much. And, Counsel, thank you for your arguments this morning. We'll take it under advisement. We're going to stand in recess to prepare for our next argument. Thank you.